By the Court, Bronson, J.
There is a court held by an assistant justice in each of the wards of the city of New-York, and another court held by three justices, which was originally called the justices' court of the city of New-York. (2 R. L. 370, § 85, and page 381, § 105, 6.) The name of the last was afterwards changed to marine court. (Stat. 1819, p. 74.) The superior court of the city of New-York has the same jurisdiction by certiorari oyer the. marine court and the assistant justices, as was formerly exercised by this court. (Stat. 1828, p. 145, & 24.) There is a subsequent act, (Stat. 1837, p. 538,) entitled “ an act relating to assistant justices' courts in the city of New- *416 York,” the third section of which provides that.the superior court, upon certiorari, “ may remit the cause to the court below for a new trial, or otherwise, with such directions as may be deemed right.” I am unable to see that this extends to cases brought up by certiorari from the marine court. It is true that the third and fourth sections do not, in terms, point to any particular subordinate court. But the title of the act, and every one of the seven other sections which it contains, make express mention of the assistant justices, and them only. Provision is made for various proceedings before the assistant justices, and the mode of reviewing their judgments; and as there is not one word in the act pointing to any other court, I think the third section should not be construed as extending to the marine court. The order for a new trial in the marine court was therefore unauthorized.
On a writ of error returnable in this court, which in judgment of law removes the record, we may, on a reversal, award a venire de novo returnable either in the court below, or at the circuit. But there is no such practice upon certiorari. There, the only judgment is affirmance or reversal, leaving the parties in the latter case to begin de novo.(a)
In this case there was neither reversal nor affirmance before the order for a new trial, and thus we have two judgments for the same thing, though for different amounts. This, and some other strange things appearing in the case, have probably resulted from blunders in making up the record. But without looking at matters of form, I think the order for a new trial was unauthorized.
On the merits, the judgment of the marine court was clearly erroneous, and should have been reversed. There is no color for the argument that the instrument on which the plaintiff sued was not a bill of exchange. A bill of exchange is a written order or request by one person to another, for the payment, absolutely and at all events, of a specified sum of money to a third *417 person. Now what have we here ? Bell requests Luff, thirty days after sight, to pay a specified sum of money to Pope. It is payable absolutely, and without reference to any particular fund; and if it be not a bill of exchange, the wit of man cannot devise óne. The justice thought it was not a bill, but only “ an order or instrument in writing,” because it was said at the time, and the proof tended to establish the fact, that Luff had funds in his hands belonging to Bell. It would be enough to say, that a written instrument which is perfectly plain and explicit on its face, cannot be changed into something else by any thing which the parties said at the time of making it, nor by any inquiry into extrinsic facts. It must speak for itself. But the notion that there cannot be a bill of exchange where the drawee has funds, if it be not entirely new, cannot date back further than 1836. It contradicts the very theory, and all the right use of a bill of exchange, which is always supposed to be drawn on funds. Incalculable mischief has resulted from the modern practice of drawing without funds, which is little better than a fraudulent use of the instrument. And although such bills have been tolerated, we have not. yet gone so far as to make it unlawful to pursue the old fashioned honest course of drawing, where the means for payment have already been provided.
Whether the payee takes the bill in satisfaction of a debt due from the drawer, or advances the money for it, cannot be a matter of any importance as between him and the drawee. It does not affect the nature of the instrument.
The statute requires that the acceptance should be in writing. (2 R. S. 768, § 6.) Here there is not only the want of any writing, but the defendant positively refused to accept, and the bill was protested for non-acceptance. And yet the defendant has been held liable. An examination of this case in all its facts would go very far to confirm the policy of the statute. But it is enough that we cannot repeal it, and until that is done the plaintiff cannot recover. He must take his remedy against the drawer; and if Bell has any money in the hands of the defendant, which is very questionable, he must sue for it. It is a chose in action *418 which cannot be transferred so as to give the assignee a right to sue in his own name, except in the form of an accepted bill of exchange. To give a parol promise to pay the effect of a written acceptance of the bill, would be no better than a device to get round the statute and defeat all the valuable ends which it was designed to accomplish. If Quin v. Hanford, (1 Hill, 82,) does not support, it certainly does not conflict with this .doctrine. In Harrison v. Williamson, (2 Edw. Rep. 430, 438,) the vice chancellor said, “a bill of exchange has not the effect of an assignment of the money for which it is drawn in the hands of the drawee; unless, perhaps, where it is drawn upon a particular fund, and then, indeed, by the law merchant, it loses its character as a bill of exchange.” He undoubtedly alluded to a class of cases, some of which are cited in Quin v. Hanford, where an order, either not payable in money, or else drawn on a particular fund, has, after acceptance or promise of payment, been allowed to operate as an equitable assignment of the fund. [And see Morton v. Naylor, 1 Hill, 583.) This has been done upon a very liberal construction of the acts of the parties, for the advancement of justice. But those cases have nothing to do with a bill of exchange proper, which is an instrument of a peculiar nature, and governed by its own laws. Although it is used for the purpose of transferring funds, and has that effect in the result, it never operates as an assignment to the payee of any particular money in the hands of the drawee. If the latter accepts the bill, the payee or other holder may sue upon the contract of acceptance. But if the drawee refuse to accept, there is no contract between him and the holder, and no action will lie. And this is so, although the drawee had funds, and ought, in justice to the drawer, to have paid the 'bill.
We think all these judgments are erroneous, and they must therefore be reversed.
Judgments reversed.

 See Lord v. The Mayor &c. of New-York, (3 Hill, 426, 430.)